**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
JAMES M. ROBINSON,                  :
                                    :   Civil Action No. 09-134 (RMB)
            Plaintiff,              :
                                    :
      v.                            :        O P I N I O N
                                    :
CORRECTIONAL MEDICAL SERVICES,      :
et al.,                             :
                                    :
            Defendants.             :
_____:

**APPEARANCES:**

James M. Robinson, Pro Se
Southern State Correctional Facility
#477777
P.O. Box 150
Delmont, NJ 08314

**BUMB, District Judge**

   Plaintiff, James M. Robinson, currently incarcerated at the Southern State Correctional Facility, Delmont, New Jersey, seeks to bring this action alleging violations of his constitutional rights in forma pauperis, without prepayment of fees, pursuant to 28 U.S.C. § 1915. Based on Plaintiff's affidavit of indigence and prison account statement, the Court will grant his application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the complaint.

   At this time, the Court must review the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it

should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the following reasons, Plaintiff's claims will be dismissed, without prejudice.

## BACKGROUND

Plaintiff seeks to sue Correctional Medical Services, Dr. Gerald Packman, Dr. Scott Williams, and Dr. Jeffrey Pomerantz. According to the allegations of the complaint, Plaintiff states that on June 14, 2007, he had surgery on his left leg, performed by Dr. Packman at St. Francis Hospital, and that a cast was placed on his leg.  Dr. Packman told Plaintiff that his cast would be removed in four weeks.

Plaintiff asserts that he went to South Woods State Prison on July 12, 2007 to have the cast removed.  Dr. Packman was not there, but defendant Dr. Williams was present.  Dr. Williams evaluated Plaintiff, and told him that he was okay.  Plaintiff asked about the cast being removed, since it had been four weeks, and Dr. Williams told Plaintiff that he was "giving [him] an additional 2 weeks to be on the safe side."  Plaintiff returned to Southern State Prison.

Plaintiff states that his cast was due to be removed on July 26, 2007.  Plaintiff asked a nurse about his cast removal, and the nurse checked a computer, which revealed that Plaintiff's

cast was not due to come off until September 30, 2007. The nurse double checked the computer, and noticed that somebody had mistaken the two week extension that Dr. Williams ordered for two months. The nurse tried to correct the error, but the earliest date she could manage was August 25, 2007.

Thus, on August 25, 2007, Plaintiff was sent back to South Woods State Prison to have the cast removed. Dr. Packman was present and removed half of the cast. During the removal, he noticed a "small womb" in the center of Plaintiff's left knee. Dr. Packman told Plaintiff that if the "womb" didn't heal in one month, that he was to return back to the clinic. Plaintiff states that the "womb" was not attended to at Southern State upon his return.

On September 12, 2007, Dr. Packman removed the other half of Plaintiff's cast and ordered physical therapy for Plaintiff's left knee. Plaintiff received therapy from October through December 2007, with no progress. The physical therapist noted in his medical notes that Plaintiff had severe scar tissue in his left knee. He suggested that Plaintiff see an orthopedic doctor for evaluation.

On February 7, 2008, Plaintiff returned to St. Francis Hospital, where Dr. Packman performed a second surgery to clean out infection in the knee, and to "manipulate [his] leg under anesthesia because [he] had severe scar tissue under [his] left

knee." Plaintiff notes that the womb finally healed, but that his knee would not bend. Dr. Packman told Plaintiff that the knee had too much scar tissue.

Plaintiff then started physical therapy at South Woods State Prison. After therapy, the therapist told him there was nothing more he could do to help Plaintiff bend the knee.

On April 24, 2008, Plaintiff returned to South Woods to see an orthopedic doctor, who recommended surgery. On June 9, 2008, Plaintiff was seen by an orthopedic doctor at the New Jersey State Prison for a second opinion. That doctor also recommended surgery.

Plaintiff had his third surgery on August 21, 2008. He was told that his leg will never be the same again. Plaintiff states that as of the time he filed this complaint, he was still going to therapy at South Woods State Prison, and not making any progress.

Plaintiff asks this Court for monetary relief.

## DISCUSSION

### A. Standard for Sua Sponte Dismissal

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996). Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C.

§ 1983 and the Federal Torts Claims Act ... many of which are routinely dismissed as legally frivolous." Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996). A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. § 1915A, that a court must dismiss, at the earliest practicable time, actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff. See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). While a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See id.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair

notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, ----, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, (1957), while abrogating the decision in other respects).

The Court of Appeals for the Third Circuit recently provided detailed and highly instructive guidance as to what type of allegations qualify as sufficient to pass muster under the Rule 8 pleading standard. See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008). The Court of Appeals explained, in relevant part:

> [T]he pleading standard can be summed up thus: "stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. This "does not impose a probability requirement at the pleading stage[ ]" but . . . "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

Phillips, 515 F.3d at 234 (internal citations omitted).

**B.    Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his or her constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to establish a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under color of state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  See Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**C.   Claims Regarding Medical Care**

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege a serious medical need and behavior on the part of prison officials that constitutes deliberate indifference to that need.  See id. at 106.

To satisfy the first prong of the Estelle inquiry, the inmate must allege facts indicating that his medical needs are serious.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9

(1992). Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. See Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. See Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. See Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation

omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. See Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

In the instant case, assuming that Plaintiff's knee injury amounts to a "serious" medical need, Plaintiff has not alleged facts indicating that the defendants were deliberately indifferent to his needs. Plaintiff was able to consult with different doctors, was treated for all complaints, received three surgeries, and received (and continues to receive) physical therapy. Plaintiff's complaint, liberally construed, alleges facts indicating no more than a disagreement with medical professionals about course of treatment, as a result of his condition not improving.

Because Plaintiff has failed to establish an Eighth Amendment violation, his complaint will be dismissed for failure to state a claim upon which relief may be granted. However, the dismissal will be without prejudice to Plaintiff filing a motion to reopen and submitting an amended complaint in accordance with the attached Order.[1]

---

[1] If Plaintiff is attempting to assert state law claims, those claims will also be dismissed, without prejudice. Pursuant to 28 U.S.C. § 1367(c)(3), where a district court has dismissed all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over a related state law claim. The Court of Appeals for the Third Circuit has held that, where all federal claims are dismissed before trial, "the district court must decline to decide the pendent state

9

**CONCLUSION**

Based on the foregoing, Plaintiff's complaint will be dismissed, without prejudice.  See Alston v. Parker, 363 F.3d 229, 234 n.7 (3d Cir. 2004) (stating that with a complaint that makes "little sense," District Court could have dismissed complaint without prejudice, to permit Plaintiff to amend the complaint to make it plain).  The Court notes that "generally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action." Martin v. Brown, 63 F.3d 1252, 1257-58 (3d Cir. 1995)(quoting Borelli v. City of Reading, 532 F.2d 950, 951 (3d Cir. 1976)).  In this case, if Plaintiff can correct the deficiencies of his complaint, he may file a motion to reopen these claims in accordance with the attached Order.

                                        s/Renée Marie Bumb
                                        RENÉE MARIE BUMB
                                        United States District Judge

Dated: March 5, 2009

---

claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (citations omitted).  Here, no such extraordinary circumstances appear to be present.